IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, | CR-09-96-DLC-RKS |
|---|---|
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO REVOKE DEFENDANT'S SUPERVISED RELEASE** |
| vs. | |
| HEATHER WISBY STEWART, | |
| Defendant. | |

**I. Synopsis**

Ms. Stewart was accused of violating the conditions of her supervised release by consuming methamphetamine. She admitted to the violations. Evidence introduced by the United States established that Ms. Stewart attempted to evade arrest for the violation, placing law enforcement officers in danger and egregiously

violating the court's trust.  Her supervised release should be revoked, and she could be incarcerated for 15 months.  No additional supervised release should be imposed.

## II. Status

Ms. Stewart pleaded guilty in 2008 to Possession with Intent to Distribute Methamphetamine.  See CD 2-1.  She was sentenced to five months in prison, to be followed by five years of supervised release.  See CD 2-1.  Ms. Stewart's supervised release was revoked in January 2012 for absconding from supervision.  CD 13.   She was ordered to serve eight months in prison, with 36 months supervised release to follow.  CD 13.  Ms. Stewart's current term of supervision began August 29, 2012.  CD 17.

Ms. Stewart's probation officer filed a "Report on Offender Under Supervision" in May 2013.  The report alleged that Ms. Stewart tested positive for several illegal drugs, and had been dishonest about her drug use with the probation officer.  The probation officer did not seek revocation at that time, and Ms. Stewart was provided outpatient substance abuse treatment.  CD 16.

**Petition**

The United States Probation Office filed a petition on July 25, 2013, asking

the court to revoke Ms. Stewart's supervised release. CD 17. The petition alleged Ms. Stewart violated the Preamble to Standard Conditions of her supervised release by consuming a controlled substance. Ms. Stewart tested positive for methamphetamine or amphetamines on or around July 19, 2013. She later told her probation officer she had used methamphetamine. CD 17. Based on the petition, the undersigned issued a warrant for Ms. Stewart's arrest on July 25. CD 18.

**Initial appearance**

Ms. Stewart was not arrested until July 30, 2013 because she hid from law enforcement officers. CD 19. She made an initial appearance before the Hon. Robert M. Holter, United States Magistrate Judge, on July 31. Ms. Stewart was accompanied by Federal Defender R. Henry Branom, who was appointed to represent her. Assistant United States Attorney Ryan Weldon represented the United States. Ms. Stewart said she had received a copy of the petition. She waived her right to a preliminary examination. Mr. Weldon stated that Ms. Stewart could be imprisoned for up to 36 months if her supervised release is revoked. Judge Holter ordered Ms. Stewart detained until the revocation hearing, which was scheduled for August 8, 2013.

**Revocation hearing**

Ms. Stewart appeared before the undersigned at the scheduled revocation

hearing with Mr. Branom. Mr. Weldon appeared for the United States. The undersigned explained the Findings and Recommendations procedure: that a recommendation would be made to United States District Judge Dana L. Christensen, who would decide finally whether to revoke Ms. Stewart's supervised release and, if so, what sanction to impose.

Mr. Branom explained that Ms. Stewart had intended to admit the alleged violation. However, she was concerned that she would be prejudiced by allegations in the United States Marshal's report regarding her arrest. Mr. Weldon said the United States could proceed without relying on the arrest report. Nonetheless, the undersigned believed the allegations in the report would be admissible and highly relevant. The hearing was re-scheduled for August 20, 2013, so the United States could call witnesses to support the allegations, and so Ms. Stewart and Mr. Branom could prepare to address the allegations. CD 24.

**Amended petition**

The United States Probation Office filed an Amended Petition on August 12, 2013, alleging the same violation but expanding the narrative account. The Amended Petition alleged that after Ms. Stewart tested positive for methamphetamine on July 19, the United States Probation Office arranged for her to receive inpatient substance abuse treatment, at her request. In the following

days, however, Ms. Stewart did not answer or return her probation officer's phone calls and did not otherwise contact her probation officer, Ray Antonsen. The probation office petitioned to revoke her release and a warrant was issued, as described above.

On July 26, officers attempted to arrest Ms. Stewart on the warrant but could not find her. That evening, Ms. Stewart called her probation officer. Ms. Stewart refused to reveal her location, but asked if there was a warrant for her arrest. The probation officer, in the interest of full disclosure, told her there was. Ms. Stewart immediately hung up. She then made every effort to evade arrest despite diligent and expensive efforts to arrest her.

Officers eventually found Ms. Stewart near the end of July 31, 2013, after a long day of searching, at the home of a convicted felon. The home was a trailer inside a scrap yard, surrounded by a fence with a padlocked gate and defended by at least two large, aggressive dogs.

The arresting officers were forced to use pepper spray and tazers to subdue the dogs. Pepper spray blew back at the officers, causing them eye and respiratory irritation. When the officers knocked on the door of the residence, they received no immediate response. One officer attempted to kick in the door, but the door was bolted or barricaded, and the officer fell in the attempt.

Ms. Stewart was found hiding and was finally arrested in the home. United States Marshals later asked Ms. Stewart why she didn't turn herself in when she learned of the warrant for her arrest. She replied that whether she cooperated or not, the result would be the same.

**Revocation hearing (rescheduled)**

Ms. Stewart appeared at the reschedule revocation hearing before the undersigned on August 20, 2013, represented by Mr. Branom. Mr. Weldon appeared for the United States. Ms. Stewart waived any right she may have had to an initial appearance on the amended petition, agreeing to proceed with the revocation hearing. She admitted to violating a condition of her supervised release by consuming methamphetamine.

The undersigned believes the admission establishes a violation, and that the violation merits revocation of Ms. Stewart's supervised release. Her violation grade is C, her criminal history category is II, and the underlying offense is a Class B felony. The maximum period she could be ordered to serve in custody is 36 months. The United States Sentencing Guidelines recommend 4 to 10 months incarceration. Up to 36 months supervised release could be imposed, less any time Ms. Stewart is ordered to serve in custody. The parties agreed with those calculations.

Mr. Branom requested a sentence within the guideline range, with no supervised release to follow.  Mr. Branom asserted that Ms. Stewart had been a key witness for the government in a homicide trial.  Mr. Branom argued that her testimony shows she is willing to cooperate with the government.  Mr. Branom also noted that Ms. Stewart has both substance abuse and mental health issues that contributed to her noncompliance.  Finally, Mr. Branom said that she was at the house where she was arrested to visit the owner, not to evade police.  Mr. Branom said that the dogs were there to protect the owner's property; they did not belong to Ms. Stewart and were not meant by any party to deter or endanger law enforcement.  None of those assertions was entirely credible, and most were not supported by evidence at the hearing.

Ms. Stewart addressed the court. She said she struggles with addiction, and returns to substance abuse when experiencing stress, as she has recently.  She said that she intends to move away from town were her violations occurred, because circumstances there increase her struggles.  Ms. Stewart said she was not attempting to hide from or evade police immediately prior to her arrest.  Ms. Stewart's demeanor was evasive, vague, and self-contradictory.  She exhibited no remorse, no contrition for her breach of trust, and no empathy for those put at risk to try to apprehend her when she fled.  Her testimony was completely non-credible.

7

The United States called several law enforcement witnesses who testified to the facts in the petition summarized above.

Ms. Stewart's probation officer, Mr. Antonsen, testified that he started looking for Ms. Stewart on July 26, but was unable to find or contact her. He testified that she called him that evening, but refused to disclose her location and hung up when she learned of the warrant.

Blackfeet Tribal Officer John Goings testified that led the team that arrested Ms. Stewart. He testified that the team encountered aggressive dogs and had to subdue them with pepper spray and a tazer, and that the pepper spray impacted some of the arresting officers. He testified that the door to the residence was blocked, and one officer fell off the porch trying to kick it in.

Officer Lester Gray, who is deputized both through the Glacier County Sheriff's office and the United States Marshals Service, testified that he also helped lead the arresting team. He testified that he was concerned about officer safety because of the vicious dogs and other potential for injuries as they forced their way into and through a junk yard.

Deputy United States Marshal Anthony Selin testified that he asked Ms. Stewart was she didn't turn herself in to law enforcement when she learned they

were looking for her, and she replied that the result would be the same (as the result if she evaded officers). Deputy United States Marshal Michael Penland testified that he heard the exchange between Deputy Selin and Ms. Stewart. Deputy Penland corroborated Deputy Selin's account.

Deputy United States Marshal Logan Bryce testified that he attempted to arrest Ms. Stewart on July 26, 2013 – the day the warrant was issued – and again on July 30, but was unable to locate her. Deputy Bryce testified that he believed Ms. Stewart was eluding law enforcement.

Mr. Branom asked the court to consider a video of the arrest, from a camera one of the officers wore during the arrest. The court has done so. The events reflected in the video are consistent with the testimony in all material respects.

### III. Analysis

Ms. Stewart's supervised release should be revoked. She should be ordered into custody for 15 months, with no supervised release to follow. Revocation and the substantial upward departure are appropriate because Ms. Stewart has violated the conditions of her supervised release numerous time, despite determined efforts of the United States Probation Office to help her. Ms. Stewart has had warnings and second chances. She has been provided outpatient substance abuse treatment. When she told her probation officer she needed inpatient treatment, her probation

officer made the arrangements and secured the funding.  Instead of embracing the opportunity, Ms. Stewart absconded.

When Ms. Stewart learned a warrant had been issued for her arrest, she cut off contact with her probation officer.  She locked herself in a residence surrounded by a large fence with a locked gate, defended by aggressive guard dogs – junkyard dogs.  Ms. Stewart knew her actions would waste law enforcement time and resources and put officers at risk.

Ms. Stewart's history of violations and her actions in this case demonstrate rejection of help her parole officer tried to provide, the court's trust, and disregard for the time and safety of the officers who were finally forced to arrest her.  Her comments after the arrest that evading officers would have no consequences further reflect her selfish attitude.  In her allocution to the court, Ms. Stewart minimized and excused her conduct.   A serious sanction is necessary to impress upon Ms. Stewart the importance of following the law.

Further supervised release should not be imposed.  Ms. Stewart's persistent unwillingness to cooperate with her probation officer or comply with the conditions make supervision ineffective.  Her attitude at the hearing, dismissiveness, lack of contrition, and lack of any sincere effort to cooperate with treatment convince the undersigned that any efforts at supervision would be futile.

## IV. Conclusion

After the hearing, the undersigned took the parties' arguments under advisement. Ms. Stewart was advised that this written recommendation would be forthcoming. She was reminded that Judge Christensen would decide whether to revoke her supervised release and, if so, what sanction to impose. She was further reminded of her right to object to this recommendation within 14 days of its issuance.

The court FINDS:

1. Ms. Stewart violated the conditions of her supervised release by consuming methamphetamine in July 2013, which is prohibited by the Preamble to Standard Conditions of her supervised release.

2. Ms. Stewart deliberately evaded arrest in July 2013 by avoiding contact with her probation officer and changing her place of residence.

3. Ms. Stewart knowingly placed law enforcement officers in danger by concealing herself within a residence guarded by large, aggressive dogs.

4. Ms. Stewart has no remorse for the actions described above or concern for their impact on others.

5. Supervised release has not been effective for Ms. Stewart, and would be a poor use of resources.

The court RECOMMENDS:

1. The District Court should enter the attached Judgment, revoking Ms. Stewart's supervised release and committing her to the custody of the United States Bureau of Prisons for 15 months.

Dated the 29th day of August, 2013.

_____
Keith Strong
United States Magistrate Judge